**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN DOE,
           *Petitioner-Appellant,*

v.

DONALD RUMSFELD, Secretary of
Defense; LES BROWNLEE, Secretary
of the United States Department of
Army (Acting); REGINALD L.
BROWN, Assistant Secretary of the
Army for Manpower and Reserve
Affairs; E. HUBRED TORREY,
Company Commander, and Does
1-10, inclusive.
           *Respondents-Appellees.*

No. 05-15680

D.C. No.
CV-04-02080-
FCD/KJM

OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, District Judge, Presiding

Argued and Submitted
October 21, 2005—San Francisco, California

Filed January 12, 2006

Before: J. Clifford Wallace, Stephen S. Trott, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Trott

**COUNSEL**

Michael S. Sorgen, San Francisco, California, for the petitioner-appellant.

H. Thomas Byron III, United States Department of Justice, Washington, D.C., for the respondents-appellees.

**OPINION**

TROTT, Circuit Judge:

Appellant, Doe, a soldier in both the Army Reserve National Guard of the United States and the California State National Guard, challenges the President's "stop-loss" authority ordering Doe to active duty for a period longer than his enlistment.

Doe's challenges fall into three general arguments. First, Doe argues the government did not satisfy the procedures required by 10 U.S.C. § 12305 in extending his service. Second, Doe asserts that § 12305 is unconstitutional. Third, Doe contends the "stop-loss" order extending his enlistment conflicts with other laws regulating members of the reserve military.

The government contends as a threshold issue that we need not address the merits of this challenge because Doe has received new orders, rendering his challenges moot.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Although we conclude that this case is not moot, we disagree with Doe's substantive arguments and affirm the district court's denial of Doe's petition for writs of habeas corpus and mandamus.

**BACKGROUND**

On May 1, 2003, Doe, an eight-year veteran of the Army, enlisted for a one-year term in the California State National Guard and the Army Reserve National Guard of the United States. The enlistment agreement, referred to in non-binding recruiting material as "Try One," allowed active duty veterans to enlist for a one-year term before making a further service commitment. The enlistment agreement, signed by Doe, stated that subsequently enacted laws and regulations could

affect the terms of his contract. The enlistment agreement pro-
vided also that "[i]n time of national emergency declared by
the President of the United States, I [Doe] may be ordered to
active duty" and that "my [Doe's] enlistment may be
extended . . . ." Enlistment Doc. § C(10)(1) & (2). *See also*
Statement of Understanding of Reserve Obligations and
Responsibilities, § 11.

Following his enlistment and initial training, Doe was
assigned to the 2668th Transportation Company based in Sac-
ramento, California. In February of 2004, Doe reenlisted for
a second one-year term, extending his contract through May
1, 2005. On July 23, 2004, Doe's unit received orders to
active-duty in support of Operation Iraqi Freedom. Doe was
notified that he would be required to serve on active duty until
March 31, 2006, approximately eleven months longer than the
term of service specified in his enlistment agreement. Pursu-
ant to these orders, Doe's unit was deployed to Fort Lewis,
Washington, for approximately forty-five days of training
before being sent to Iraq.

Doe, however, was never sent to Iraq. On January 27, 2005,
in response to a medical condition, Doe received new orders
retaining him on active duty under 10 U.S.C. § 12301(d). On
January 31, 2005, Doe received his present assignment to the
California Medical Community Based Health Care Organiza-
tion in Sacramento, California, where he was to receive health
care evaluations and treatment, which may result eventually
in his discharge from active duty.

## PROCEDURAL HISTORY

On October 1, 2004, Doe filed a petition for writs of habeas
corpus and mandamus, and for declaratory and injunctive
relief ordering his release from any further obligation of mili-
tary service under his existing enlistment contract. In addition
to these claims, Doe argued that the involuntary extension of
his enlistment was contrary to constitutional and statutory

law. On the same day, Doe sought a temporary restraining order, which was denied on October 5, 2004. On November 5, 2004, the district court denied Doe's motion for a preliminary injunction. Following this denial, Doe brought an interlocutory appeal to the Ninth Circuit and moved the court for emergency injunctive relief. On January 18, 2005, we issued an order denying the motion for injunctive relief and affirming the district court's denial of Doe's request for a preliminary injunction. On March 15, 2005, the district court rendered a decision on the merits, denying Doe's remaining claims. On April 8, 2005, Doe timely filed his Notice of Appeal.

## STANDARD OF REVIEW

We review a district court's interpretation and construction of federal statutes de novo. *S.E.C. v. McCarthy*, 322 F.3d 650, 654 (9th Cir. 2003). Similarly, we review challenges to the constitutionality of a federal statute or federal regulation de novo. *See Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 720 (9th Cir. 2003) (statute); *Gonzalez v. Metro. Transp. Auth.*, 174 F.3d 1016, 1018 (9th Cir. 1999) (regulation).

## DISCUSSION

### A. Mootness

[1] Fourteen days before oral argument, the government submitted a brief suggesting Doe's appeal is moot. The government says that Doe's January 31, 2005 activation orders assigning him to a medical retention center preclude him from being subject to the "stop-loss" authority of 10 U.S.C. § 12305; and that, after the completion of his medical assignment, Doe "well may be discharged from the service." Government's Oct. 7, 2005 Brief 4. At oral argument, we asked the government whether Doe, following his medical assignment, could be returned to active duty subject to § 12305's

"stop-loss" status. The government represented that Doe would not be returned to active duty under § 12305 after the medical assignment is completed. Nevertheless, Doe's January 31, 2005 orders refer to a "temporary" assignment with instructions to return to his permanent station at the end of the assignment. Moreover, his current orders specify that he must remain on active duty until January 18, 2006, as reflected in his most recent earnings statement. Consequently, we conclude Doe continues to have a personal stake in the outcome of this case sufficient to avoid dismissal on the ground of mootness. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 478 (1990) ("[P]arties must continue to have a personal stake in the outcome of the lawsuit.") (internal citations omitted).

## B.   Section 12305

[2] 10 U.S.C. § 12305 maintains that "the President may suspend any provision of law relating to promotion, retirement, or separation applicable to any member of the armed forces who the President determines is essential to the national security of the United States." Doe argues that an applicable provision of law was never properly suspended, and thus that the extension of his service was impermissible.

MILPER Message[1] No. 03-040 ("MILPER Message"), issued on November 21, 2002, operationalized the Stop Loss policy. *Santiago v. Rumsfeld*, 425 F.3d 549, 556 (9th Cir. 2005) (as amended). In Paragraph 3, it states: "The provisions of regulations governing voluntary retirements, separations, and REFRADs[2] of officers and enlisted soldiers . . . are suspended . . . ." Thus, the MILPER Message served both as a suspension and an extension. Doe's extension was properly executed pursuant to the statute.

---

[1] The military uses MILPER Messages to disseminate information regarding procedural guidance and informative commands to those military personnel in the field.

[2] REFRADs are those soldiers that have returned from active duty.

**[3]** Doe's assertion is additionally foreclosed by our decision in *Santiago*, in which we held that the President's power under § 12305(a) "was properly delegated to the Assistant Secretary of the Army for Manpower and Reserve Affairs, who entered the stop-loss order suspending the separation laws on November 4, 2002" pursuant to MILPER Message No. 03-040. 425 F.3d at 557.

Doe argues also that the President should have first made a determination that his military service was essential to national security. But the statute does not require the President to determine each and every person who is essential, nor does it require that the President elucidate the reasons for his determination.

**[4]** The President declared a national emergency on September 14, 2001. Presidential Proclamation 7463, 66 Fed. Reg. 48199 (Sept. 14, 2001); *see also* 69 Fed. Reg. 55313 (Sept. 10, 2004) (extending national emergency for one more year); 50 U.S.C. § 1621(a) (conferring authority upon President to declare national emergency); *Santiago*, 425 F.3d at 556. In the same proclamation, he invoked his power under 10 U.S.C. § 12302 to activate members of the Army National Guard of the United States. *Id.* On July 23, 2004, Doe's unit was activated. The activation of his unit during the state of national emergency was enough to satisfy the statutory requirements. Doe's contention fails.

## C.   Constitutional Arguments

Doe argues that 10 U.S.C. § 12305(a) is unconstitutional for three reasons. First, Doe contends that Section 12305 permits arbitrary infringement on his liberty. Second, Doe implicitly asserts that "stop-loss" authority is an impermissible delegation of power by Congress. Third, Doe argues that his extended enlistment violates his Fifth Amendment Due Process rights because the government failed to provide

meaningful notice of its ability to extend his enlistment. For the reasons set forth below, each argument fails.

### 1. Arbitrariness

Doe contends that 10 U.S.C. § 12305 is unconstitutional because it fails to include boundaries on the President's "stop-loss" authority sufficient to safeguard Doe's Fifth Amendment liberty interest. Doe's argument ignores the language of Section 12305 as well as the limitations of activation imposed by 10 U.S.C. §§ 12301, 12302, and 12304.

[5] The presidential power to extend enlistment contracts is limited to circumstances essential to the "national security of the United States." 10 U.S.C. § 12305(a). Moreover, an extension of enlistment can be imposed only on "members of a reserve component" that are "serving on active duty pursuant to an order to active duty under authority of section 12301, 12302 or 12304." 10 U.S.C. § 12305(a). The sections identified in § 12305(a) allow activation in limited circumstances. Section 12301(a) provides for activation "[i]n time of war or of national emergency declared by Congress or when otherwise authorized by law." Section 12302, referenced by the "stop-loss" order activating Doe, provides for activation "in time of national emergency declared by the President . . . ." Section 12304 allows the President to activate a limited number of reserve guard members for an operational mission lasting not more than 270 days. Consequently, the President's power to extend enlistments is expressly limited, and therefore, if exercised within these limits, cannot be said to be arbitrary. Doe provides no basis upon which we could review for "arbitrariness" a military decision to activate a particular unit for combat. The propriety of such military decisions presents a non-justiciable question which we decline to reach.

### 2. Delegation of Power

[6] To the extent Doe suggests 10 U.S.C. § 12305 is an impermissible delegation of legislative power, he is mistaken.

The Supreme Court has recognized that under Article I, Congress has wide latitude in delegating its powers. *Mistretta v. United States,* 488 U.S. 361, 373 (1989). Thus, "[s]o long as Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power." *Id.* at 372 (internal citation omitted) (alteration in original). Section 12305 incorporates the intelligible principle that the President has "stop-loss" authority during "times of national emergency." Consequently, we conclude that 10 U.S.C. § 12305 is not an unconstitutional delegation of congressional authority. *See also United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 323 (1936) (recognizing the occasional need for Congress to vest especially broad discretion in the President in the area of foreign affairs).

### 3. Notice

**[7]** Doe claims he did not have sufficient notice because he had no reasonable expectation that he could be ordered to perform military service beyond his one-year enlistment agreement, except in rare circumstances of national exigency. In *Santiago* we addressed this very argument. 425 F.3d at 559. There, the soldier asserted a due process claim, arguing that he was not provided sufficient notice that his enlistment agreement could be extended. *Id.* We held this argument unpersuasive because the enlistment agreement identified the possibility that the soldier's service could be extended. *Id.*

Doe's enlistment agreement contains the same language we held dispositive in *Santiago*. As in *Santiago*, Doe's signed agreement states that "[l]aws and regulations that govern military personnel may change without notice to me." It then provides, in two additional sections of the enlistment agreement, that Doe could be involuntarily placed into active duty if the President or Congress declared a national emergency.[3] There-

---

[3]In the enlistment section titled "Partial Statement of Existing United States Laws," the contract states:

fore, pursuant to this language, and in light of *Santiago*, Doe's notice contention lacks merit.

Doe attempts to distinguish *Santiago* by arguing that the "Try One" moniker was misleading and precluded Doe from receiving requisite notice. Nothing in the record suggests Doe was misled or that the government made misrepresentations. While the military may have marketed the program to Doe as "Try One," such marketing does not overcome the text of the enlistment agreement that Doe actually signed. As we held in *Santiago*, the enlistment agreement gave warning in plain language that his service could be extended.

## D.   Other Statutes Regulating Military Reserves

### 1.   Applicability of 10 U.S.C. § 12407(a)

Doe argues that his involuntary enlistment extension violates 10 U.S.C. § 12407(a). Doe's postulate relies upon a strained interpretation that discounts the statutory scheme regulating the federal and state National Guard.

[8] Doe signed a dual enlistment contract, under which he enlisted in the California Army National Guard and as a Reserve of the Army with membership in the National Guard

---

I may be required to perform active duty or active duty for training without my consent (other than as provided in item 8 of this document) as follows:

(1) In time of national emergency declared by the President of the United States, I may be ordered to active duty (other than for training) for not more than 24 months.

Enlistment Doc. § C(10). The Statement of Understanding of Reserve Obligation and Responsibilities that accompanies the enlistment document similarly states, "I may at any time be ordered to active duty involuntarily as a member of a unit in the event of a war or national emergency declared by Congress or the President of the United States . . . ."

of the United States. Enlistment Doc. § E(17). As set forth in *Johnson v. Powell*, Congress established the "dual enlistment" system in 1933 to avoid limitations on federal service found in the Militia Clause of Article I of the Constitution by organizing a separate reserve of federal soldiers under Congress' broader power to raise and support armies. 414 F.2d 1060, 1063 (5th Cir. 1969); *see also* Act of June 15, 1933, 48 Stat. 153 & 155-56, §§ 1 & 58 (1933). Congress incorporated the National Guard of the United States as a reserve component of the military, subject to activation "in time of war or national emergency and at such other times as the national security may require." 10 U.S.C. § 10102. As such, the National Guard of the United States may be "ordered to active duty and retained as long as so needed" at times when Congress determines that "more units and organization are needed for the national security than are in the regular components of the ground and air forces." 10 U.S.C. § 10103; *see also* 10 U.S.C. §§ 12301, 12302, and 12304 (setting forth the specific circumstances in which the National Guard of the United States can be ordered into action). In contrast to these statutes that apply to the National Guard of the United States, 10 U.S.C § 12407(a) restricts the extension of enlistments of soldiers in the National Guard of a State:

> Whenever the President calls the National Guard of a State into Federal service, he may specify in the call the period of the service. Members and units called shall serve inside or outside the territory of the United States during the term specified, unless sooner relieved by the President. However, no member of the National Guard may be kept in Federal service beyond the term of his commission or enlistment.

In light of this language it would be improper for a President to extend, for "Federal" service, the enlistment of a member of the National Guard of a State.

**[9]** Despite this distinct statutory scheme, Doe argues that the reference to "National Guard" in the third sentence of § 12407(a) applies to both the National Guard of a State *and* the National Guard of the United States. Accordingly, Doe asserts that his extension, regardless of his membership in the National Guard of the United States, is a violation of 10 U.S.C. § 12407(a). This interpretation is unconvincing and inconsistent with case law.

When interpreting a statute, a court is "guided not by a single sentence or member of a sentence, but [should look] to the provisions of the whole law, and to its object and policy." *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 94-95 (1993) (internal quotation omitted). Furthermore, "where possible, provisions of a statute should be read so as not to create a conflict." *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 370 (1986). Doe's interpretation violates both of these statutory construction principles.

The first sentence of § 12407(a) grants the President power to call the "National Guard of a *State* into Federal service." (Emphasis added.) This sentence limits the scope of § 12407(a) to the National Guard of a State. Consequently, when the third sentence uses the phrase "National Guard," it is exclusively referring to the "National Guard of a State."

Furthermore, Doe's interpretation would implicitly repeal portions of 10 U.S.C. § 12305 that expressly allow enlistment extensions for members of the National Guard of the United States. Therefore, because "repeals by implication are not favored," Doe's interpretation and argument must be rejected. *See Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 121 (2003) (internal citations omitted).

## 2. Applicability of 10 U.S.C. § 12103 and 32 U.S.C. §§ 302 and 303.

**[10]** Doe argues that his enlistment extension violates 10 U.S.C. § 12103 and 32 U.S.C. §§ 302 and 303. Doe's argu-

ments are not well-founded. 32 U.S.C. §§ 302 and 303 explicitly govern the State National Guard and not the National Guard of the United States. *See* 32 U.S.C. § 101(3)-(5) ("Army National Guard means that part of the organized militia of the several States and Territories . . . ."). Thus, because Doe's extension involved his enlistment in the National Guard of the United States, 32 U.S.C. §§ 302 and 303 are simply inapplicable.

**[11]** 10 U.S.C. § 12103 is also inapplicable, but for different reasons. Section 12103 provides that reserve enlistments of members of the National Guard of the United States are extended until six months after the "end of a war or emergency" declared by Congress. Pursuant to this language, Doe asserts this is the only way an enlistment can be extended. Doe's argument is not persuasive.

**[12]** Section 12103 identifies certain circumstances where an act of Congress automatically extends the enlistment of a member of the National Guard of the United States. There is nothing in the language of the statute to indicate this is the exclusive manner in which an enlistment can be involuntarily extended. Moreover, to implicitly read into the statute this exclusivity, thereby creating a direct conflict with 10 U.S.C. § 12305, is contrary to established case law. *See*, *e.g.*, *La. Pub. Serv. Comm'n*, 476 U.S. at 370 (identifying the principle that when interpreting statutory schemes, the court should, where possible, read the provisions of the statute so as not to create a conflict with other statutes).

**[13]** Even if we were to accept Doe's assertion and read § 12305(a) to be in conflict with 10 U.S.C. § 12103 and 32 U.S.C. §§ 302 and 303, we still could not construe these sections to override the provisions of § 12305. Section 12305(a) plainly states the President's authority as identified in the section applies "[n]otwithstanding any other provision of law." Thus, even if we found § 12305 to be in conflict with the stat-

utes identified by Doe, which we do not, those conflicting terms would be expressly revoked.

## CONCLUSION

**[14]** Doe's arguments challenging the President's "stop-loss" authority are not persuasive. Pursuant to *Santiago*, the "stop-loss" order extending Doe's enlistment is a valid exercise of presidential power authorized by 10 U.S.C. § 12305(a). Section 12305 comports with the requirements of the Fifth Amendment's Due Process Clause and is a proper delegation of congressional power. Finally, the "stop-loss" order does not conflict with 10 U.S.C. §§ 12103 and 12407(a) or 32 U.S.C. §§ 302 and 303 and, even if conflicting, the language of § 12305(a) would overide those conflicting provisions. Consequently, the judgment of the district court is **AFFIRMED**.