**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

JAMES A. BOHN,
    *Defendant-Appellant.*

No. 09-30397

D.C. No.
CR 08-00018-
RHW-1

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Robert H. Whaley, Senior District Judge, Presiding

Submitted July 16, 2010*
Seattle, Washington

Filed September 17, 2010

Before: Susan P. Graber and Richard A. Paez,
Circuit Judges, and Larry A. Burns,** District Judge.

Opinion by Judge Graber

---

 *The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).

 **The Honorable Larry A. Burns, United States District Judge for the Southern District of California, sitting by designation.

14381

**COUNSEL**

James A. Bohn, defendant-appellant pro se.

Stephanie Van Marter, Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellee.

**OPINION**

GRABER, Circuit Judge:

Defendant James A. Bohn did not wear a helmet while riding his motorcycle on a federal road located in the Lake Che-

lan National Recreational Area, and he disobeyed a National Park Service ("NPS") ranger's orders to stop and to identify himself. Defendant challenges an NPS traffic regulation that adopts the substantive prohibitions of state law, including the requirement that motorcyclists wear helmets. We hold that, pursuant to its powers under the Property Clause, the federal government may enforce that regulation on land over which it has merely proprietary jurisdiction. Finding no merit in Defendant's arguments on this or any other issue, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

There is a road in the Stehekin Valley of Washington state. The Stehekin Valley Road originated as a county road, but Chelan County transferred its interest in the road to the federal government in 1970.[1] The Stehekin Valley Road is located within the Lake Chelan National Recreational Area, which the NPS administers as part of the North Cascades National Park Service Complex.

On August 24, 2007, Defendant and a companion passed an NPS ranger on the Stehekin Valley Road. The ranger saw that Defendant and his companion were riding motorcycles and that neither one of them was wearing a helmet. The uniformed ranger, who was in a marked NPS vehicle, motioned for the motorcyclists to stop. As they continued past him, he also verbally ordered them to stop. Defendant acknowledged the order, but did not stop. The ranger then drove after the motorcyclists, honking his horn at them and motioning repeatedly for them to pull over. Defendant's companion pulled over and stopped. Defendant did not. The ranger followed Defendant.

Defendant eventually stopped at a building farther down

---

[1]In 1992, the United States brought a quiet title suit against the county regarding ownership of the Stehekin Valley Road. The United States prevailed in that suit. *United States v. Chelan County*, No. CS-92-0331 (E.D. Wash. June 4, 1993).

the road. The ranger stopped also and asked Defendant for his name. Defendant provided only his first name and refused to give his last name. However, the ranger deduced Defendant's last name from the first name and from Defendant's local reputation. Defendant left on his motorcycle shortly thereafter.

The ranger cited Defendant for failure to wear a helmet, in violation of 36 C.F.R. § 4.2(b), and for refusing to obey a lawful order, in violation of 36 C.F.R. § 2.32(a)(2). At trial, Defendant subpoenaed the Chelan County sheriff to testify as a defense witness. The sheriff did not appear to testify, and Defendant accused the prosecutor of telling the sheriff not to come to testify. But the magistrate judge found that the sheriff voluntarily failed to appear. After a bench trial, the magistrate judge found Defendant guilty of the violations and entered judgment against him. On appeal, the district court affirmed the judgments of conviction. Defendant timely appeals.

## DISCUSSION

### I.  The Property Clause

**[1]** Congress authorized the NPS to

> regulate the use of the Federal areas known as national parks, . . . to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

16 U.S.C. § 1. The Secretary of the Interior has the authority to issue "such rules and regulations as he may deem necessary or proper for the use and management of the parks." *Id.* § 3.

**[2]** Pursuant to that congressional grant of rule-making authority, the NPS issued 36 C.F.R. § 4.2, which provides:

(a) Unless specifically addressed by regulations in this chapter, traffic and the use of vehicles within a park area are governed by State law. State law that is now or may later be in effect is adopted and made a part of the regulations in this part.

(b) Violating a provision of State law is prohibited.

The regulation applies to "all persons entering, using, visiting, or otherwise within . . . the boundaries of federally owned lands and waters administered by the National Park Service." 36 C.F.R. § 1.2(a)(1); *see also id.* § 4.1 ("The applicability of the regulations in this part is described in § 1.2 of this chapter."). Subject to certain exceptions not applicable here, Washington law prohibits driving a motorcycle without wearing a helmet on a state highway, county road, or city street.[2] Wash. Rev. Code § 46.37.530(1)(c).

Defendant contends that, because the federal government does not have exclusive or concurrent jurisdiction over the Stehekin Valley Road, requiring motorcyclists to wear helmets on the road exceeds congressional authority. We review de novo the constitutionality of a statute or regulation challenged as exceeding congressional authority. *Doe v. Rumsfeld*, 435 F.3d 980, 984 (9th Cir. 2006).

**[3]** The federal government has at least proprietary jurisdiction over land that it owns. *Kleppe v. New Mexico*, 426 U.S. 529, 540 (1976). Here, Defendant concedes that the federal government has proprietary jurisdiction over the Stehekin Valley Road. For purposes of this appeal, we assume without

---

[2]In the district court, Defendant argued that the Washington statute, as incorporated by 36 C.F.R. § 4.2, does not require motorcycle helmets on the Stehekin Valley Road. The district court ruled against Defendant on that issue, and he does not challenge that ruling on appeal.

deciding that the federal government lacks exclusive or concurrent jurisdiction over the road.[3]

**[4]** The Property Clause grants Congress plenary power to "determine what are needful rules respecting the public lands." *Id.* at 539 (internal quotation marks omitted). That power does not depend on the existence of concurrent or exclusive jurisdiction. *Id.* at 542-43. In *Kleppe*, the Supreme Court explained:

> [W]hile Congress can acquire exclusive or partial jurisdiction over lands within a State by the State's consent or cession, the presence or absence of such jurisdiction has nothing to do with Congress' powers under the Property Clause. Absent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory, but Congress equally surely retains the power to enact legislation respecting those lands pursuant to the Property Clause.

*Id.* Thus, Congress has power over the Stehekin Valley Road under the Property Clause, even if the federal government lacks concurrent or exclusive jurisdiction over it.

In *Kleppe*, which involved a challenge to the federal government's authority over wild horses and burros, the Court held that the Property Clause grants Congress the power "to regulate and protect the wildlife living [on public lands]." *Id.* at 541. Wildlife regulations are not at issue in the present case. But the Supreme Court also noted in *Kleppe* that the Property Clause allows Congress "to control the[ ] occupancy

---

[3]The federal government may acquire exclusive or concurrent jurisdiction over land located within a state either by consent or by cession. *Kleppe*, 426 U.S. at 542. The record before us does not allow us to determine whether the state consented to federal jurisdiction and whether the federal government accepted jurisdiction pursuant to 40 U.S.C. § 3112, as would be necessary to create exclusive or concurrent jurisdiction over the Stehekin Valley Road.

and use" of public lands and to enact legislation "respecting the public lands if it be found to be necessary for the protection of the public, or of intending settlers." *Id.* at 540 (internal quotation marks and brackets omitted).

**[5]** Here, Congress authorized regulations "to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired." 16 U.S.C. § 1. Regulating the use of federal parks to protect the land and the wildlife living there and to promote nondestructive use of the parks easily falls within the permissible category of "needful rules" that "control the[ ] . . . use" of federal land, and "protect[ ] . . . the public." *Kleppe*, 426 U.S. at 539-40. We hold that the grant of rule-making authority to the NPS did not exceed congressional power under the Property Clause. Nor does 36 C.F.R. § 4.2, a regulation that controls traffic and motor vehicle use, exceed Congress' Property Clause power. That regulation clearly qualifies as a needful rule for the use of federal land and the protection of the public.

Defendant asserts that, under the Property Clause, regulations must relate to the designated purpose of the federal land. But, even assuming for the sake of argument that the traffic regulation here does not relate to "provid[ing] for the enjoyment of the [national parks] in such manner and by such means as will leave them unimpaired for the enjoyment of future generations," 16 U.S.C. § 1, the authority that Defendant cites for his proposition is not on point. *Free Enterprise Canoe Renters Ass'n of Missouri v. Watt*, 711 F.2d 852, 856 (8th Cir. 1983), and the case on which it relies, *Minnesota v. Block*, 660 F.2d 1240, 1249 (8th Cir. 1981), hold that Property Clause power extends to conduct threatening the designated purpose of federal lands whether that conduct occurs *on or off* federal land. Neither case holds that Property Clause power over conduct occurring *on* federal land is limited by the

designated purpose of the federal land. Defendant's citations are therefore unpersuasive.

Defendant also argues that 36 C.F.R. § 4.2 is not needful for the protection of the public because there is no federal policy on motorcycle helmets and because the state laws incorporated by reference into 36 C.F.R. § 4.2 either do not require motorcycle helmets under all circumstances or do not require them at all. Therefore, Defendant reasons, 36 C.F.R. § 4.2 does not serve a federal interest in safety. His logic is flawed. The fact that the federal government does not generally mandate helmet use does not mean that the federal government has concluded that helmet use never serves the interest of safety. Similarly, that state governments sometimes do not require motorcyclists to wear helmets does not mean that requiring their use does not protect the public.

Our conclusion here as to the extent of the federal government's Property Clause power agrees with the conclusion reached by the Fifth Circuit in a similar case. *United States v. Gliatta*, 580 F.2d 156, 160 (5th Cir. 1978), held that the Property Clause authorized the government to enact and enforce regulations "designed to maintain safety and order on government property." The Fifth Circuit affirmed the defendant's conviction for violating several provisions of 39 C.F.R. § 232.6 by driving in an unsafe manner in a post office parking lot and by driving his car into a parking space after being ordered to stop. *Id.*

Finally, we reject Defendant's contention that the NPS is enforcing state law in violation of a memorandum of understanding between the NPS and the Chelan County Sheriff's Office. The federal government is enforcing a federal regulation here, albeit one that incorporates state law by reference. We acknowledge Defendant's warning that if the federal government adopts and enforces the substance of state law pursuant to the Property Clause, there could effectively be dual (or conflicting) enforcement of the same substantive provisions

by state and federal officials. However, the fact that it might be a poor use of federal resources to duplicate state effort, or that it might be politically unwise to crack down on conduct that state law enforcement chooses to ignore, does not mean that the Property Clause withholds from the federal government the power to act. Moreover, although state priorities in prosecuting violations do not bind the federal government, if a state wishes to shield certain conduct from federal penalties, it can do so by rewriting its own law.

## II.   Enforcement of 36 C.F.R. § 2.32(a)(2)

Defendant also challenges on several grounds his conviction for failure to obey the ranger's orders to stop and to provide his full name, in violation of 36 C.F.R. § 2.32(a)(2). We review de novo the district court's interpretation of agency regulations. *Santiago v. Rumsfeld*, 425 F.3d 549, 556 n.5 (9th Cir. 2005). We review a claim of insufficient evidence de novo to determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Bucher*, 375 F.3d 929, 934 (9th Cir. 2004). We review de novo whether there has been a violation of a defendant's Fifth Amendment right to remain silent. *United States v. Hernandez*, 476 F.3d 791, 796 (9th Cir. 2007).

**[6]** Defendant argues that 36 C.F.R. § 2.32(a)(2) does not apply to the Stehekin Valley Road because the regulation covers only areas under concurrent or exclusive federal jurisdiction. The general applicability provision of the NPS regulations provides that the regulations apply to "all persons entering, using, visiting, or otherwise within . . . the boundaries of federally owned lands and waters administered by the National Park Service." 36 C.F.R. § 1.2(a)(1). But the specific regulation that Defendant violated provides that "[t]he regulations contained in this section apply, regardless of land ownership, on all lands and waters within a park area that are

under the legislative jurisdiction of the United States."**4** 36 C.F.R. § 2.32(b). That regulation does not expressly state whether it applies to land within a park area that is not under legislative jurisdiction. In other words, § 2.32 does not state whether it applies to land under merely proprietary jurisdiction, such as the Stehekin Valley Road.

**[7]** Ordinarily, the maxim of *expressio unius est exclusio alterius* might suggest that the agency intended the regulation to apply *only* to the specified land and not to areas under merely proprietary jurisdiction. But here, the history of this regulation compels a different conclusion. Section 2.32(b) was added to the regulation to expand its applicability to privately owned land, not to prevent application of the regulation to federally owned land under proprietary jurisdiction.

The precursor to the current § 2.32 originally prohibited conduct only on federal land. *See* 31 Fed. Reg. 16650-01, 16652 (Dec. 29, 1966) (prohibiting giving false information or a false report); *id.* at 16651 (providing that the regulation "shall apply to all persons entering . . . the boundaries of any federally owned or controlled areas administered by the National Park Service," but not to "privately owned lands . . . within the boundaries of any park area, except as may be provided by regulations").

In 1983, the NPS revised its regulations. 48 Fed. Reg. 30252-01 (June 30, 1983). The NPS stated that ten regulations would henceforth apply on privately owned land, including rules governing disorderly conduct, weapons, fires, hunting, and gambling. *Id.* at 30253. The NPS explained that the expanded application of those regulations was "necessary to protect property rights and ensure public safety." *Id.* Section 2.32 was among the regulations made applicable to "privately

---

**4**The regulations define legislative jurisdiction as "lands and waters under the exclusive or concurrent jurisdiction of the United States." 36 C.F.R. § 1.4.

owned lands and waters under the legislative jurisdiction of the United States." *Id.* at 30287. But § 1.2(a) retained the provision making the NPS regulations generally applicable to persons within the boundaries of federally owned lands and waters. *Id.* at 30275. Nothing suggests that the expanded applicability of the ten selected regulations to privately owned land was matched by a corresponding withdrawal of their applicability to federally owned land. Indeed, it would be absurd for the NPS to control (for example) campfires on privately owned land but not on federally owned land. Thus, in 1983, § 2.32 prohibited violating a lawful order on both federal land under proprietary jurisdiction and on privately owned land under federal legislative jurisdiction.

In 1987, the agency revised its rules again, "to clarify the NPS['s] intent." 52 Fed. Reg. 35238-01, 35238 (Sept. 18, 1987). "The NPS has determined that the phrase 'privately owned lands' does not clearly encompass the full range of non-federal landowners originally intended." *Id.* The agency amended § 2.32 so that it would "apply, regardless of land ownership, on all lands and waters within a park area that are under the legislative jurisdiction of the United States." *Id.* at 35240. That text remains in effect today. Once more, the agency's explanation of the amendment does not suggest that the agency intended § 2.32 to become applicable only to federal lands under legislative jurisdiction, to the exclusion of federal lands under merely proprietary jurisdiction.

**[8]** From this history, it is clear that § 2.32(b) was intended to make the substantive prohibitions of § 2.32(a) applicable on non-federal land. There is no evidence that § 2.32(b) was intended to make § 2.32(a) inapplicable to federally owned land. Accordingly, we conclude that § 2.32(b) does not restrict the applicability of § 2.32(a) to only land that is under federal legislative jurisdiction. And because § 2.32 does not so limit its own applicability, the general applicability provisions of § 1.2 govern. Section 1.2 provides that the NPS regulations apply to persons on federally owned land under NPS

administration. We therefore hold that § 2.32(a)(2) applies to land administered by the NPS that is under proprietary jurisdiction. It applies to the Stehekin Valley Road.

**[9]** Defendant also argues that his conduct did not violate 36 C.F.R. § 2.32(a)(2) because the ranger did not give him a valid order. There was sufficient evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that the ranger gave Defendant orders. The ranger testified that he repeatedly motioned for Defendant to stop, verbally ordered Defendant to stop, and honked his horn while following Defendant in a marked vehicle. The ranger also testified that he told Defendant, "I need your last name." Furthermore, the regulation requires compliance with orders "during . . . law enforcement actions, . . . or other activities where the control of public movement and activities is necessary to maintain order and public safety." 36 C.F.R. § 2.32(a)(2). Enforcing the helmet requirement is both a law enforcement action and an activity in which control of public movement is necessary to maintain public safety. We hold that there was sufficient evidence that the ranger gave Defendant valid orders.

**[10]** In addition, Defendant asserts that punishing him for refusing to give his last name violates his Fifth Amendment right to remain silent. But the Fifth Amendment does not prohibit the compelled disclosure of an individual's name "absent a reasonable belief that the disclosure would tend to incriminate him." *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 190-91 (2004). "Answering a request to disclose a name is likely to be so insignificant in the scheme of things as to be incriminating only in unusual circumstances." *Id.* at 191. Here, there was no unusual circumstance. Defendant's last name did not incriminate him—the ranger already knew who Defendant was and exactly what he had done. We hold that Defendant's conviction did not violate the Fifth Amendment.

### III.  Denial of Due Process

Defendant argues that the prosecutor violated his Fifth Amendment right to due process by preventing the appearance of the Chelan County sheriff, whom Defendant had subpoenaed to testify.[5] This court reviews de novo whether preventing the testimony of a defense witness violates a criminal defendant's right to due process. *United States v. Kincaid-Chauncey*, 556 F.3d 923, 934 (9th Cir.), *cert. denied*, 130 S. Ct. 795 (2009).

**[11]** A criminal defendant's constitutional rights may be violated when "witnesses are made unavailable through the suggestion, procurement, or negligence of the government." *United States v. Hernandez-Gonzalez*, 608 F.2d 1240, 1243 (9th Cir. 1979) (internal quotation marks and brackets omitted). For instance, "[u]ndue prosecutorial interference in a defense witness's decision to testify arises when the prosecution intimidates or harasses the witness to discourage the witness from testifying." *Williams v. Woodford*, 384 F.3d 567, 601 (9th Cir. 2004). But even if this court were to assume that the prosecutor acted improperly, that conduct would not have violated Defendant's right to due process because the sheriff's testimony would not have been material.

**[12]** In *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982), the Supreme Court held that the Due Process Clause protects the "fundamental fairness" of a trial. "Such an absence of fairness is not made out by the Government's

---

[5]Defendant does not argue that this alleged conduct violated his Sixth Amendment right to obtain witnesses in his favor. In any event, the analysis would be nearly identical under the Fifth and the Sixth Amendment. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) ("Having borrowed much of our reasoning with respect to the Compulsory Process Clause of the Sixth Amendment from cases involving the Due Process Clause of the Fifth Amendment, we have little difficulty holding that at least the same materiality requirement obtains with respect to a due process claim.").

deportation of the witnesses . . . unless there is some explanation of how their testimony would have been favorable and *material*." *Id.* (emphasis added). Here, Defendant has not made *any* showing of materiality. Defendant informs us that the sheriff's testimony would have (1) explained the memorandum of understanding between the NPS and the Chelan County Sheriff's Office; (2) established what advice the sheriff had given Defendant before the incident on the road; and (3) established Defendant's good faith with respect to whether state law required helmets on the Stehekin Valley Road and whether NPS rangers had authority to give orders there. None of that testimony would have been material to the charges against Defendant.

First, a lay witness "may not . . . testify as to a legal conclusion, such as the correct interpretation of a contract." *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001). Thus, the sheriff would not be allowed to testify to the legal implications of the memorandum of understanding. Similarly, he would not be allowed to testify as to whether Washington state law requires helmets on the Stehekin Valley Road.

Second, in the State of Washington, the executive branch may not amend a statute by its interpretation or advice to the public. *See Kim v. Pollution Control Hearing Bd.*, 61 P.3d 1211, 1214 (Wash. Ct. App. 2003) ("[N]either an administrative agency nor the courts may read [a statute] in a way that the enacting legislature never intended."). Thus, even if the sheriff had advised Defendant that he did not need to wear a helmet on the Stehekin Valley Road, that advice would not, by itself, make Defendant's failure to wear a helmet legal.

Third, a defendant's good faith may be an affirmative defense against a specific intent crime, but not against a general intent crime. *See United States v. Smith-Baltiher*, 424 F.3d 913, 924 n.9 (9th Cir. 2005) (noting that a good-faith defense is not applicable to a charge of illegal re-entry because the offense is a general intent crime). Here, the mag-

istrate judge determined that both the helmet violation and the refusal to obey a lawful order are general intent offenses. Defendant has not challenged that ruling on appeal. Thus, Defendant's good faith—even if proved by the sheriff's testimony—would not have supplied a defense to the violations with which he was charged.

**[13]** We hold that, even if the prosecutor deprived Defendant of the sheriff's testimony, the prosecutor did not thereby deprive Defendant of his right to due process, because the sheriff's testimony would not have been material.

In conclusion, we see no errors requiring reversal of Defendant's convictions. The federal government has the power under the Property Clause to enforce 36 C.F.R. § 4.2(b) on land over which it has only proprietary jurisdiction. There was sufficient evidence that Defendant violated 36 C.F.R. § 2.32(a)(2), which applies on land administered by the NPS over which the federal government has only proprietary jurisdiction. That conviction did not violate Defendant's Fifth Amendment right to remain silent. Defendant was not deprived of his Fifth Amendment right to due process.

AFFIRMED.