**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KELLY SOO PARK,
    *Plaintiff-Appellant*,

v.

KAREN THOMPSON,
    *Defendant-Appellee*.

No. 14-56655

D.C. No.
2:14-cv-00330-SJO-RZ

OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted October 4, 2016
Pasadena, California

Filed March 14, 2017

Before: Stephen Reinhardt, Ferdinand F. Fernandez, and
John B. Owens, Circuit Judges.

Opinion by Judge Reinhardt;
Partial Concurrence and Partial Dissent by
Judge Fernandez

# SUMMARY[*]

## Civil Rights

The panel reversed the district court's dismissal of a complaint and remanded in an action against City of Santa Monica Police Detective Karen Thompson and Doe defendants alleging defendants violated and conspired to violate plaintiff's right to compulsory process and a fair trial by intimidating and attempting to dissuade a key witness from testifying on behalf of the defense.

The panel held that plaintiff adequately alleged misconduct by Thompson that rose to the level of substantial interference with a defense witness in contravention of the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. The panel further held that plaintiff adequately pleaded that Thompson's misconduct caused the witness to refuse to testify. The fact that plaintiff was eventually acquitted did not render the witness testimony immaterial, nor did it bar plaintiff's Section 1983 action stemming from violations of her rights during the underlying criminal investigation and prosecution. The panel concluded that the witness's testimony was material to plaintiff's defense because evidence of third-party culpability would have cast some doubt on the government's evidence at plaintiff's trial. Finally, the panel held that plaintiff pleaded sufficient facts to state a plausible claim for civil conspiracy under Section 1983.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Concurring in part and dissenting in part, Judge Fernandez stated that the complaint's mere general pleading that there was some sort of nexus between Thompson's action and the witness's decision not to testify was conclusory and insufficient. Judge Fernandez did not think that there was a proper allegation of a substantive violation, and did not believe that a conspiracy was effectively alleged. He agreed with the majority that the issue of qualified immunity should be remanded to the district court for its consideration in the first instance.

## COUNSEL

Becky S. James (argued) and Jessica W. Rosen, James & Stewart LLP, Pacific Palisades, California, for Plaintiff-Appellant.

Anthony P. Serritella (argued), Deputy City Attorney; Marsha Jones Moutrie, City Attorney; Jeanette Schachtner, Chief Deputy City Attorney; Santa Monica City Attorney's Office, Santa Monica, California, for Defendant-Appellee.

## OPINION

REINHARDT, Circuit Judge:

Kelly Soo Park was tried by the state of California for the murder of Juliana Redding. Before trial, the judge ruled that she would not allow Park to present any evidence of third-party culpability after Park's key witness on that question, Melissa Ayala, invoked her Fifth Amendment privilege and refused to testify. Park was eventually acquitted of all charges.

Park then sued Detective Karen Thompson and Doe Defendants under 42 U.S.C. § 1983. Park alleged in her first claim that Thompson violated her constitutional rights to compulsory process and a fair trial by intimidating and attempting to dissuade Ayala from testifying on behalf of the defense. Park asserted a second claim against Thompson and Doe Defendants for conspiracy to violate her civil rights under 42 U.S.C. § 1983 by orchestrating criminal charges against Ayala with the intention that she invoke the Fifth Amendment and refuse to testify on Park's behalf.[1] The district court dismissed both causes of action for failure to state a claim, and Park appeals.[2]

---

[1] Although the two claims as alleged in the pleadings are intermingled and overlapping, we treat them separately for purposes of this opinion. On remand, the parties and the district court may decide to analyze them together should that prove preferable.

[2] The present appeal addresses the dismissal of Park's amended complaint, which she filed after the district court dismissed her original complaint with leave to amend. For the sake of clarity, we hereinafter refer to the amended complaint as "the complaint."

This appeal presents several issues of law. First, we must decide whether Park has adequately alleged misconduct by Thompson that rises to the level of substantial interference with a defense witness in contravention of the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. Because we hold that Park has adequately alleged such misconduct, we must decide a second issue: whether Park adequately pleads that Thompson's misconduct caused Ayala to refuse to testify. We hold that Park has pleaded a sufficient causal connection between Thompson's misconduct and Ayala's unavailability. Third, we must consider whether Park nonetheless failed to state a claim because Ayala's purported testimony was not favorable and material to her criminal defense. We hold that the fact that Park was eventually acquitted does not render Ayala's testimony immaterial, nor does it bar Park's Section 1983 action stemming from violations of her rights during the underlying criminal investigation and prosecution. Furthermore, we conclude that Ayala's testimony was material to Park's defense because evidence of third-party culpability would have cast some doubt on the government's evidence at Park's trial. Finally, we must make similar determinations with respect to Park's conspiracy claims. Here, we also hold the allegations sufficient.

In view of the above, we reverse the district court's judgment and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

## I.  Factual Background

On March 15, 2008, Juliana Redding was strangled to death in her home in Santa Monica, California. Detective Karen Thompson of the Santa Monica Police Department ("SMPD") was the lead investigator on the Redding case. After a few months passed without any leads as to who was responsible for Redding's death, Detective Thompson requested permission from SMPD to continue investigating on her own time. She eventually matched DNA found on Redding's body to Park. The Los Angeles County District Attorney's Office ("District Attorney") consequently charged Park with Redding's murder.

Park's murder trial was set for May of 2013. As part of her criminal defense, Park sought to introduce evidence that Redding's killer was actually John Gilmore, the victim's boyfriend at the time of her death. Gilmore had a history of domestic violence and had previously assaulted Redding.[3]

---

[3] Most of the facts set forth in this section are historical and not likely to be a subject of dispute. Others may be disputed, but with regard to the first claim, all are adequately pleaded in the complaint and thus sufficient to defeat Thompson's motion to dismiss. For purposes of this opinion only, we deem them all to be true. We consider separately the facts that relate to the conspiracy claim and are principally alleged on information and belief. As to that claim, we conclude that under all the circumstances, the allegations, with all the inferences that must be drawn in Park's favor, are sufficient to plead a plausible claim for conspiracy. Thus we assume those facts to be true as well, but again solely for the purpose of the motion to dismiss.

On January 31, 2013, Park's investigator interviewed Gilmore's former girlfriend, Melissa Ayala. During that interview, Ayala told the investigator that Gilmore had been violent toward her and had choked her on at least three occasions. According to Ayala, the first of these incidents occurred after Ayala brought up Redding's death and accused Gilmore of murdering Redding. Before choking Ayala, Gilmore responded, "You want to see how she [Redding] felt?" On the second occasion, after Ayala again accused Gilmore of murdering Redding, he stated, while choking Ayala, that he was "[g]oing to show [Ayala] how [Redding] felt." Gilmore was convicted of domestic violence against Ayala. During the interview with Park's investigator, Ayala said she was afraid of Gilmore, but she agreed to testify about his violent behavior and the statements he made about Redding's death.

After learning of this potentially exculpatory evidence, Park gave notice to the District Attorney of her intention to call Ayala as a defense witness at trial. Detective Thompson then contacted Ayala and attempted to dissuade her from testifying for the defense. Among other things, Thompson allegedly told Ayala that Gilmore–who had physically abused Ayala in the past–was "really upset" about her statements. Park also alleges that Thompson knowingly made false representations to Ayala about the nature of the evidence against Park.[4] In addition, Thompson allegedly told Ayala, "[Y]ou don't have to talk to them [defense investigators] if

---

[4] For example, Thompson told Ayala that the police had found "blood on the front door handle . . . so the killer [Plaintiff] was injured during the struggle and she left her blood DNA on the door handle." A transcript of the phone call may be found at pages 407–432 of the excerpts of record.

you don't want to . . . [I]f they call you, you don't even need to call back. . . . You're not under any obligation to do anything.".

Detective Thompson allegedly admitted that she "had *not* spoken to Ms. Ayala for investigatory purposes," but rather had called Ayala only to "repair the damage the Private Investigators had done to her relationship [with Gilmore]." After speaking with Detective Thompson, Ayala refused any further contact with Park's investigators, although prior to that conversation she had cooperated fully with them. Also, after the conversation, she reneged on her commitment to testify as a witness on Park's behalf.

On information and belief, Park alleges that Thompson and/or Defendant Does, at Thompson's instigation, later spoke with the El Segundo Police Department about filing charges against Ayala for assault and criminal threats against Gilmore based on an incident that had occurred during the previous year. Park alleges that Detective Thompson and/or Defendant Does told the El Segundo Police Department that it was important to file charges against Ayala as soon as possible because the charges would cause her to invoke the Fifth Amendment, thereby precluding her from testifying about Gilmore's statements. Finally, Park alleges that as a result of this conversation, the District Attorney charged Ayala with felony conspiracy, assault, and criminal threats a few weeks before Park's scheduled trial.

On May 9, 2013, Ayala appeared in court pursuant to Park's subpoena to testify at trial. The Deputy District Attorney informed Ayala's defense attorney that if he did not instruct Ayala to invoke her Fifth Amendment right against self-incrimination, then she would move to "recuse" him.

Ayala invoked her Fifth Amendment right and declined to testify.[5] After Ayala refused to testify, the judge presiding over the criminal case precluded the presentation of any evidence relating to Park's third-party culpability defense.

Park was tried and acquitted of all criminal charges. Park's defense counsel elicited favorable testimony from the prosecution's DNA expert, who testified that Park's DNA could have been transferred to Redding's body by the actual killer when he wiped down the apartment to eliminate fingerprints or DNA evidence. Park alleges that even though she was ultimately acquitted, her acquittal was far less certain in the absence of Ayala's testimony. Without that testimony, Park was precluded from presenting evidence of third party culpability at trial and was limited to presenting solely a failure of proof defense.

## II. Procedural History

Park filed her complaint in district court asserting two causes of action against Detective Thompson and Defendants Does 1–10: (1) deprivation of civil rights, 42 U.S.C. § 1983, by violation of the Sixth Amendment's Compulsory Process Clause and denial of her right to a fair trial under the Due Process Clause of the Fourteenth Amendment; and (2)

---

[5] Park's complaint also alleges that Detective Thompson interfered with two other witnesses, Park's associate Ronnie Case and Park's fiancé (now husband), Thomas Chronister. The district court decision does not mention these allegations.

conspiracy to violate civil rights, 42 U.S.C.§ 1983, alleging violation of the same two constitutional rights.**[6]**

The district court granted Detective Thompson's motion to dismiss the complaint without leave to amend. With respect to Park's claim against Thompson individually: first, the district court's opinion was not entirely clear as to whether the district judge held that Park had not adequately alleged that Thompson's conduct constituted substantial interference. Second, the district court concluded that Park had "not pleaded sufficient facts leading to a reasonable inference that it was Defendant's alleged persuasion that caused Ayala not to testify." Third, the district court concluded that the complaint failed to establish that Ayala's testimony would have been "material" to Park's third party culpability defense. The district judge reasoned that because Park would have obtained, and did obtain, the same result (acquittal), regardless of whether Ayala's testimony was presented to the jury, her Section 1983 claims were precluded. In addition, because Ayala's testimony was "not actually 'exculpatory evidence,'" the district judge concluded that its exclusion did not materially prejudice Park's defense. For the same reasons, as well as others, the district judge dismissed Park's conspiracy claim without leave to amend.**[7]**

---

**[6]** Park's original complaint also asserted a cause of action for declaratory relief, but she later voluntarily dismissed this claim. This appeal deals only with Park's Section 1983 claim against Thompson individually and her conspiracy claim against Thompson and others.

**[7]** Despite the fact that Park's complaint pleads a claim for civil conspiracy under Section 1983, the district court erroneously construed her conspiracy claim as a Section 1985 claim, apparently on the assumption that conspiracy claims must be brought under that section. The law is to the contrary. "[I]t is permissible to state a civil cause of action for

Park appeals the district court's dismissal of her claim against Thompson individually and her conspiracy claim against Thompson and Doe Defendants.

## STANDARD OF REVIEW

We review *de novo* a district court's dismissal for failure to state a claim under Rule 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). We accept the plaintiff's allegations as true and view them in the light most favorable to her. *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011). "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss." *Lee*, 250 F.3d at 679. Moreover, dismissal is appropriate if the complaint fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

---

conspiracy, based on § 1983." *Cohen v. Norris*, 300 F.2d 24, 27 (9th Cir. 1962). "Hence, the fact that conspiracy is alleged here does not mean that the plaintiff is invoking § 1985(3)." *Id.* The district court was incorrect to treat Park's conspiracy claim as a Section 1985 claim, given that she pleaded this claim under Section 1983 as permitted by our precedents and did not allege any "racially or otherwise 'invidiously discriminatory animus' behind the conspirator's action" as required under Section 1985(2), (3). *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see also Bretz v. Kelman*, 773 F.2d 1026, 1029–30 (9th Cir. 1985) ("[A]n allegation of class-based animus is an essential requirement of a claim under the second clause of § 1985(2).").

## DISCUSSION

### I.  Section 1983 Claim for Violation of Sixth Amendment Right to Compulsory Process and Fourteenth Amendment Right to a Fair Trial

"To make out a cause of action under Section 1983, [the] plaintiff[] must plead that (1) the defendant[] acting under color of state law (2) deprived plaintiff[] of rights secured by the Constitution or federal statutes." *Williams v. California*, 764 F.3d 1002, 1009 (9th Cir. 2014) (internal quotation marks omitted). In the present case, it is undisputed that Detective Thompson was acting under color of state law. Consequently, Park's Section 1983 claim must be allowed to proceed if she pleaded sufficient facts to state a claim for violation of her constitutional rights under the Sixth and Fourteenth Amendments.[8]

The Compulsory Process Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend VI. The right to compulsory process encompasses "[t]he right to offer the

---

[8] The analysis under the Sixth and Fourteenth Amendments is "nearly identical." *United States v. Bohn*, 622 F.3d 1129, 1137 n.5 (9th Cir. 2010); *see also United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) ("Having borrowed much of our reasoning with respect to the Compulsory Process Clause of the Sixth Amendment from cases involving the Due Process Clause of the Fifth Amendment, we have little difficulty holding that at least the same materiality requirement obtains with respect to a due process claim."). "Therefore, we do not unduly concern ourselves with drawing fine distinctions between cases interpreting the Sixth Amendment Compulsory Process Clause and those interpreting the . . . Due Process Clause." *United States v. Juan*, 704 F.3d 1137, 1141 n.1 (9th Cir. 2013).

testimony of witnesses, and to compel their attendance, if necessary." *Washington v. Texas*, 388 U.S. 14, 18–19 (1967). As "a fundamental element of due process of law," the right to compulsory process is incorporated against the states through the Due Process Clause of the Fourteenth Amendment. *See id.* at 19, 20.

The Supreme Court has established that the government violates due process when its conduct "effectively dr[ives a] witness off the stand." *Webb v. Texas*, 409 U.S. 95, 98 (1972) (per curiam) (holding right to present a defense was violated when the trial judge singled out and admonished a defense witness about the risks of perjury in "unnecessarily strong terms"). We have further explained that, under *Webb*, "[i]t is well established that 'substantial government interference with a defense witness's free and unhampered choice to testify amounts to a violation of due process.'" *Ayala v. Chappell*, 829 F.3d 1081, 1111 (9th Cir. 2016) (quoting *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005)). Although *Webb* dealt only with judicial misconduct, wrongful conduct by prosecutors or law enforcement officers can also constitute "substantial government interference" with a defense witness's choice to testify. *See, e.g.*, *United States v. Vavages*, 151 F.3d 1185, 1189 (9th Cir. 1998) ("[T]he conduct of prosecutors, like the conduct of judges, is unquestionably governed by *Webb*."); *United States v. Little*, 753 F.2d 1420, 1439–40 (9th Cir. 1984) (analyzing claim of defense witness intimidation by IRS agents); *see also Ayala*, 829 F.3d at 1111 (explaining that allegations of witness intimidation by detective, taken as true, would amount to constitutional violation).

The Supreme Court has also made clear that "the Sixth Amendment does not by its terms grant to a criminal

defendant the right to secure the attendance and testimony of any and all witnesses," but only "*witnesses in his favor*." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (emphasis in original). Consequently, even where there may have been governmental misconduct, a criminal defendant cannot establish a violation of his compulsory process right unless he "make[s] some plausible showing" of how the potential witness's "testimony would have been both material and favorable to his defense." *Id.*; *see also Cacoperdo v. Demosthenes*, 37 F.3d 504, 509 (9th Cir. 1994) (holding Sixth Amendment witness interference claim fails without showing of relevance and materiality).

To state a claim for violation of her fair trial and compulsory process rights, Park must therefore adequately plead (1) that Thompson's alleged conduct amounts to "substantial government interference" with a defense witness; (2) that Thompson's conduct caused Ayala not to testify; and (3) that Ayala's testimony would have been favorable and material. As we have explained previously, because we are reviewing a motion to dismiss, we treat Park's allegations as if they were true and draw all inferences in her favor for the limited purpose of this opinion. *See Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016). In this light, we conclude that Park has adequately pled each of the three requisite elements.

### 1. Substantial Interference

To make out a claim against Thompson, Park must show not only that Thompson engaged in misconduct, but also that such misconduct was causally connected to Ayala's refusal to testify.

### a. Misconduct

The "substantial interference inquiry is extremely fact specific" and requires an evaluation of the totality of the circumstances. *United States v. Juan*, 704 F.3d 1137, 1142 (9th Cir. 2013). It constitutes substantial misconduct for a prosecutor or a law enforcement officer to "intimidate[] or harass[] the witness to discourage the witness from testifying." *Bohn*, 622 F.3d at 1138 (quoting *Williams v. Woodford*, 384 F.3d 567, 601 (9th Cir. 2004); *see also Ayala*, 829 F.3d at 1111 (explaining that it could amount to substantial interference with witnesses if it were proved that detective "threatened, coerced, manipulated, and/or intimidated potential and actual witnesses," including by threatening to investigate witness's wife for smuggling drugs into prison). Although it is permissible for law enforcement to contact potential witnesses before trial for investigatory purposes, *see Little*, 753 F.2d at 1440, we have cautioned that "abuses can easily result when officials elect to inform potential witnesses of their right not to speak with defense counsel." *Cacoperdo*, 37 F.3d at 509 (internal quotation marks omitted).

In the present case, Detective Thompson contacted Ayala after Park gave notice to the District Attorney of her intention to use Ayala as a defense witness at her criminal trial.[9] During the course of the phone conversation, Thompson told

---

[9] A simple, investigatory phone call to a potential witness does not amount to misconduct, *see Little*, 753 F.2d at 1440, but Detective Thompson did not call Ayala for investigatory purposes: Thompson stated in a sworn declaration "that the 'only reason' for her call to Ms. Ayala was to 'repair the damage [Park's] Private Investigators had done to [Ayala's] relationship with [Mr. Gilmore].'"

Ayala that "John [Gilmore] was really upset about the whole thing because he–he feels like they just made you lose faith in him, I guess." Park asserts that, in light of Gilmore's "history of violence towards Ms. Ayala," Thompson's statements constitute thinly veiled threats that Gilmore might retaliate against Ayala if she were to testify. Accepting Park's allegations as true and viewing them in the light most favorable to her, it is plausible to infer that Thompson intended to intimidate Ayala, a domestic violence victim, by informing her that Gilmore, her abuser, was "really upset" by her potential testimony.

Moreover, Park contends that Thompson's actual motive in asserting Gilmore's innocence, Park's guilt, and the defense team's dishonesty was to dissuade Ayala from testifying. *See Bohn*, 622 F.3d at 1138; *see also Smith v. Baldwin*, 466 F.3d 805, 824 (9th Cir. 2006)[10] (explaining that the intent at issue in evaluating prosecutorial misconduct "is the intent to cause a witness not to testify in a particular manner or not to testify at all," but intent is not at issue where intimidation or coercion is obvious), *vacated by Smith v. Baldwin*, 510 F.3d 1127 (9th Cir. 2007) (en banc). During the phone call in question, Thompson declared, among other things, that Gilmore was certainly innocent and that Park was in fact the killer: "And first, what I want to tell you is that John [Gilmore] is not the killer. . . . But the two people who showed up at your house two weeks ago . . . they are private investigators who were hired by the defense team that is representing the killer [Park] [in] this case."

---

[10] Cited not as precedent but for the persuasiveness of its reasoning. *See* 9th Cir. Gen. Order 5.5(d).

Park further alleges that Thompson made false representations of the evidence against Park, incorrectly stating, for example, that Park "left her blood DNA on the door handle." Detective Thompson also encouraged Ayala not to "believe what they're [the defense team] saying," because they were "going to tell every lie they can to try and get [Park] off." Thompson described the defense team as "private investigators who are hired by [Park's] defense attorneys to try and shoot holes in – in our prosecution of their – of the bad guy" and stated that they "bent the facts to try to, you know, make you think something else." Taken together, the allegations regarding Thompson's misrepresentation of the evidence against Park, coupled with her statements about Park's guilt, Gilmore's innocence, and the defense investigators' duplicity (as well as her statement that Gilmore was "really upset" with Ayala), can reasonably be interpreted as adequately pleading a deliberate intent on the part of Thompson to intimidate and otherwise attempt to persuade Ayala to refuse to testify on behalf of the defense.[11]

### b. Causation

The district judge concluded that Park "has not pleaded sufficient facts leading to a reasonable inference that it was Defendant's alleged persuasion that caused Ayala not to testify." He reasoned that the telephone conversation between Thompson and Ayala was the only fact alleged connecting Thompson to Ayala. In his view, because "various actors,"

---

[11] Because the misconduct alleged above is sufficient, we do not consider in this section the additional conduct that primarily relates to the conspiracy claim involving the Doe defendants. For similar reasons, we do not consider that additional conduct in subsection 2 relating to causation or subsection 3 relating to materiality.

including the deputy district attorney, Ayala's defense counsel, and the trial judge, "were involved in the time between the telephone conversation and Ayala's failure to testify," there was an insufficient causal link between Thompson's phone call and Ayala's choice not to testify. We disagree: Park's complaint alleges sufficient facts to establish a causal connection between Thompson's conduct and Ayala's refusal to testify.

Although our precedent clearly requires some "causal link" between the government's conduct and the witness's decision not to testify, *see Juan*, 704 F.3d at 1142, our cases do not clearly specify how such a requirement may be satisfied. Other circuits to address the issue have articulated a variety of causation standards for claims of witness interference. *See Griffin v. Davies*, 929 F.2d 550, 553 (10th Cir. 1991) ("There must be a plausible showing that an act by the government caused the loss or erosion of testimony that was both material and favorable to the defense."); *United States v. Hoffman*, 832 F.2d 1299 (1st Cir. 1987) ("[A]n accused must, at a minimum, demonstrate some plausible nexus between the challenged government conduct and the absence of certain testimony."); *United States v. Weddell*, 800 F.2d 1404, 1412 (5th Cir.), *opinion amended on denial of reh'g*, 804 F.2d 1343 (5th Cir. 1986) (remanding to the district court for an evidentiary hearing on "whether or not [the witness], *except for* the actions of the government, would have indeed testified for her husband and that her testimony would have had any effect on the jury verdict." (emphasis added)); *United States v. Silverstein*, 732 F.2d 1338, 1345–46 (7th Cir. 1984) (concluding that trial judge's misstatements to a witness about the potential for a perjury prosecution were not the "*decisive factor* in [the witness's] decision not to testify" and any error was therefore harmless (emphasis

added)); *United States v. Blackwell*, 694 F.2d 1325, 1343 (D.C. Cir. 1982) (where "the witness herself never refuses to testify" because of "the lack of a direct nexus between the judge's and prosecutor's remarks and [the defendant's] loss of [the witness's] testimony.").

To decide the present case, however, we need not adopt any particular causation standard because the complaint in the present case contains sufficient factual allegations to preclude us from affirming on causation grounds under any reasonable standard. Park's defense team made a substantial effort to obtain Ayala's testimony, including serving her with a subpoena. Before Detective Thompson's phone call, Ayala had committed to testifying for the defense and had cooperated with defense investigators. After the phone conversation, however, Ayala refused any further contact with the defense investigators and subsequently declined to testify.[12] In light of all of the allegations taken together,

---

[12] Although it is true, as the district judge noted, that the actions of the trial judge, the prosecutor, Ayala's defense lawyer, and Ayala herself represent contributing causes to Ayala's ultimate refusal to testify, the fact that the actions of other individuals also contributed to Ayala's decision does not mean that Thompson's phone call did not have a sufficient causal connection to Ayala's refusal: the subsequent actions of the prosecutor, judge, and Ayala's lawyer are not, drawing all inferences in Park's favor, unforeseeable intervening causes that would break the chain of proximate causation set in motion by Thompson's acts of persuasion. Causation in this case is, moreover, ultimately a question for the finder of fact to decide. *See Farr v. NC Mach. Co.*, 186 F.3d 1165, 1171 (9th Cir. 1999) ("As the Supreme Court emphasized, '[t]he issues of proximate causation and superceding cause involve application of law to fact, which is left to the factfinder, subject to limited review.'") (quoting *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 840–41 (1996)).

including that Thompson called Ayala for an admittedly non-investigatory purpose, misrepresented the evidence against Park, implicitly suggested that Ayala's former abuser was upset with her, proclaimed Gilmore's innocence and Park's guilt, and maligned the defense investigators, we conclude that Park has adequately pleaded a causal connection between Thompson's phone call and Ayala's decision to renege on her original commitment to testify for the defense.[13]

---

Insofar as the dissent suggests that either Supreme Court precedent or our precedent binds us to apply a "but for" causation standard, it misreads both our precedents (as explained above) and those of the Supreme Court. *See* Dissenting Op. at 36 (citing *Burrage v. United States*, __ U.S. __, __, 134 S. Ct. 881, 887–89, 187 L. Ed. 2d 715 (2014)). *Burrage* did not provide a causation standard for compulsory process claims, but rather interpreted the phrase "results from" in the Controlled Substances Act to encompass the rudimentary causation principle of actual cause. *See* 134 S. Ct. at 887–88, 892. This statutory interpretation does not control our constitutional analysis here.

Nor does our conclusion that Park has adequately pleaded causation rely entirely, or even partially, on "conclusory information and belief allegations." Dissenting Op. at 36. To the contrary, taking the facts pleaded in the complaint in the light most favorable to Park, we simply conclude that they permit a "plausible" causal connection between Thompson's phone call, Ayala's refusal immediately thereafter to communicate further with Park's defense team, and her subsequent refusal to testify.

[13] Thompson cites one case, *Smiddy v. Varney*, 803 F.2d 1469 (9th Cir. 1986), to support her argument that the prosecutor's actions broke the chain of causation between her phone call and Ayala's refusal to testify. *Smiddy*, however, is inapposite for several reasons. First, that case deals only with post-trial calculation of *damages* rather than the existence of a cause of action. *See id.* at 1473 ("[T]he independent act of the prosecutor four days after Smiddy's arrest, unless shown to have been improperly influenced by the police officers, cut off further liability for damages suffered thereafter."). Second, *Smiddy* applies to "negligent conduct," not

## 2. Materiality

Park must also "make some plausible showing" of how the potential witness's testimony "would have been both material and favorable to [her] defense" to establish a violation of her compulsory process and fair trial rights. *See Valenzuela-Bernal*, 458 U.S. at 867. It is indisputable that Ayala's testimony would have been favorable to Park's defense, and Thompson does not contest that fact. Park must therefore adequately allege only that Ayala's testimony would have been material. *See id.*

### a. Park's acquittal did not render Ayala's testimony immaterial.

Thompson argues that Park's acquittal bars her Section 1983 action, apparently on the theory that Ayala's testimony was rendered immaterial by Park's acquittal. The district judge at one point in his brief order "assum[ed] that [Park's] state court acquittal is not a bar to her Section 1983 claim," although he characterized the question "[w]hether a Section 1983 claim survives absent a conviction in an underlying criminal action" as an open question in our circuit. He nonetheless held that the exclusion of Ayala's testimony would not have been "material" to Park's defense because, even with the testimony, Park "would have obtained the same result."

---

to *intentional misconduct* by law enforcement officers. *See id.* at 1471, 1473 (recognizing that "pressure, undue influence, or knowing misstatements by police could. . . extend the chain of causation"). Third, *Smiddy* dealt with a Section 1983 claim for an unconstitutional arrest. *See id.* at 1470. All in all, the causation analysis in that case is not relevant to Park's compulsory process and fair trial claims.

The district court was incorrect to characterize this issue as an open question, and his order is inconsistent with the established law of this circuit: our binding precedent clearly explains that an acquittal does not bar a Section 1983 action based on a due process violation during an underlying criminal proceeding. *Haupt v. Dillard*, 17 F.3d 285, 287–88 (9th Cir. 1994). In *Haupt*, we held that "acquittal does not erase all injury" but instead "speaks only to the amount of damages." *Id.* at 287. The defendant in *Haupt* was acquitted despite the "egregious behavior" of a detective and a deputy district attorney, who "threatened" and "intimidated" the trial judge to the point "that [he did] not dare . . . give the advisory verdict of acquittal" as he had originally intended. *Id.* (Internal quotation marks omitted) (alteration in original). The defendant then sued the detectives and municipal defendants under Section 1983. Although "there was no conviction" in the underlying criminal trial, we held that "the alleged violation of Haupt's due process rights was complete when the trial judge changed his jury instructions because of [the detective's and prosecutor's] intimidation." *Id.* at 288. Consequently, we held that Haupt's acquittal did not defeat his claim for denial of due process. *Id.*

In addition to her compulsory process claim, Park, like the plaintiff in *Haupt*, claims a violation of her right to a fair trial under the Due Process Clause. This fair trial claim necessarily incorporates her compulsory process claim, as the right to obtain witnesses in one's favor is part of the due process "right to fairly 'present a defense.'" *United States v. Juan*, 704 F.3d 1137, 1141 (9th Cir. 2013) (quoting *Webb*, 409 U.S. at 98). Consequently, our analysis of Park's overlapping compulsory process and due process claims is essentially the same, *see* note 8, *supra*, and her acquittal does not bar either one.

Park was deprived of her principal and apparently sole defense—that a third party was guilty of the murder—due to Thompson's alleged interference with Ayala's testimony. The circumstances of Park's trial stand in stark contrast to those in *Valenzuela-Bernal*, the Supreme Court's seminal witness interference case, in which the defendant did not know whether the deported witnesses could actually aid in his defense, 458 U.S. at 861, 872–74. Here, the state's alleged interference with her key witness entirely deprived Park of her principal defense, thereby altering the entire trajectory of her criminal trial.

A trial in which the principal defense has been effectively barred cannot be reconciled with the Due Process Clause, which "guarantees that a criminal defendant will be treated with that fundamental fairness essential to the very concept of justice." *Valenzuela-Bernal*, 458 U.S. at 872 (internal quotation marks and citation omitted).[14] The constitutional violation in question here therefore includes not simply the fact that Ayala's testimony was improperly suppressed, but also the consequent elimination of Park's principal (if not her

---

[14] A defense, of course, must be distinguished from simply punching holes in the prosecution's case by pointing out its weaknesses, which was the basis of Park's acquittal. *See United States v. Spencer*, 981 F.2d 1083, 1086 (9th Cir.) (distinguishing between failure of proof and defense of misidentification), *opinion amended and superseded on denial of reh'g*, 1 F.3d 742 (9th Cir. 1992); *cf. United States v. Scott*, 437 U.S. 82, 98 n.11 (1978) (distinguishing between "acquittal on the merits" and the release of a defendant "for reasons required by the Constitution or laws, but which [reasons] are unrelated to factual guilt or innocence" and noting that the Court has no difficulty in ascertaining such distinctions).

only) defense.[15] Park's allegations thus plausibly establish an "absence of [] fairness [that] fatally infected the entire trial," *Valenzuela-Bernal*, 458 U.S. at 872 (internal quotation marks and citation omitted), in violation of her constitutional rights under the Due Process Clause of the Fourteenth Amendment.

Park's acquittal did not erase Park's constitutional injury, *see Haupt*, 17 F.3d at 187, nor does it mean that Ayala's key testimony was not material. It would be a different case if Ayala were one of many witnesses willing to testify to Gilmore's culpability: if other witnesses were available to provide a predicate for Park's third-party culpability defense, then Ayala's suppressed testimony might not have been material, and Park's trial would have been "fair." Given that Park's principal defense was completely suppressed, however, Ayala's testimony was not somehow suddenly rendered immaterial at the moment of Park's acquittal. *See id.* at 288. Thus, under *Haupt*, Park adequately alleges a violation of her due process right to a fair trial based on the suppression of Ayala's testimony, regardless of the fact that she was eventually acquitted. We recognize that the Eleventh Circuit has created a conflict with *Haupt* in a subsequent

---

[15] The trial judge explained that Ayala's decision not to testify was dispositive as to the admissibility of Park's third party culpability defense: "And if today Miss Ayala is asserting her 5th Amendment rights and not going to testify, then I am going to preclude you from mentioning anything about the third party culpability defense;" "[I]f you don't have a witness that is – can testify to [Gilmore's statements], then it is not going to come in and the jury is not going to hear it, and you are not going to mention it in your opening statement. So the rubber meets the road today;" "[I]f you can't get the connecting evidence in [i.e. Ayala's non-hearsay testimony as to Gilmore's statements while choking her, connecting him to Redding's murder], none of that other stuff [i.e. ongoing fighting between Redding and Gilmore, including past violent outbursts] is coming in".

compulsory process case. *See Kjellsen v. Mills*, 517 F.3d 1232, 1239–40 (11th Cir. 2008).[16] We see no reason, however, to abandon *Haupt* in favor of the Eleventh Circuit's approach in *Kjellsen*.[17] That decision is not only inconsistent

---

[16] We also recognize that in the *Brady* context, the Sixth and Tenth Circuits have held Section 1983 claims are barred when the plaintiff was acquitted. *See Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988); *see also Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir.1998) (same). The Seventh Circuit has explicitly declined to decide whether an acquittal bars a subsequent Section 1983 action based on *Brady* violations. *See Mosley v. City of Chicago*, 614 F.3d 391, 397 (7th Cir. 2010) ("Our circuit has not directly resolved whether a plaintiff can assert a claim for a *Brady* violation when the trial resulted in an acquittal.").

[17] We note that in *Kjellsen*, unlike in the case before us, the alleged constitutional violation had no effect on the basic course of proceedings of the trial nor on the issues that the fact-finder was required to resolve. The plaintiff in that case sued for violation of his compulsory process right based on the failure of the forensic sciences division of the Georgia Bureau of Investigation to reveal an exculpatory retest of his blood alcohol levels before his criminal trial for driving under the influence and other charges. 517 F.3d at 1235–36. (This alleged violation was probably more accurately characterized as a *Brady* violation, but the plaintiff did not pursue relief under that theory. *Id.* at 1239 n.2.) Because the retest results reflected similar numbers to those obtained from a retest performed by the defense, these "additional test results . . . would not have materially improved the information in the defense's possession," and therefore "could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 1240. Therefore, the materiality test was not satisfied. *Id.* In contrast, Thompson's misconduct in the present case not only deprived Park of potentially helpful information, but also altered the entire trajectory of her trial by wholly precluding the third party culpability evidence, which might have secured her acquittal regardless of the deficiencies in the prosecutor's DNA evidence. This evidence, unlike the test results in *Kjellsen*, would have "materially improved" her defense and "put the whole case in . . . a different light." *Id.*

with our binding precedent in *Haupt*, but also fails to recognize the distinction between a criminal prosecution and a Section 1983 action.

The concept of "materiality" does not carry a static and uniform meaning across these two different contexts. In a criminal case, in which the defendant seeks reversal of his conviction, "materiality" means material to the conviction. In other words, in a criminal case, suppressed evidence or testimony is only material if it could have affected the fact-finder's determination whether the defendant is guilty beyond a reasonable doubt. *See Valenzuela-Bernal*, 458 U.S. at 874 (explaining testimony is material "only if there is a reasonable likelihood that [it] could have affected the judgment of the trier of fact").

*Valenzuela-Bernal*, for example, dealt solely with the materiality of evidence in a criminal case in which the defendant was convicted. It stands for an elementary proposition of our criminal law: we do not reverse convictions based on the absence of testimony, evidence, or even effective assistance of counsel, unless the convicted defendant can demonstrate that he was somehow "prejudiced" by the deprivation. 458 U.S. at 868. In *Valenzuela-Bernal*, the Supreme Court unsurprisingly refused to reverse a conviction simply because the government deported two potential witnesses, especially given that the defendant "made no attempt to explain" how the deportees' testimony could have assisted his defense. *Id.* at 861, 872–74. In short, the error was not "material" to the relief sought—the reversal of the conviction.

In contrast, in a Section 1983 action, the plaintiff is not seeking reversal of his conviction, but rather compensation

for the violation of his constitutional rights during a previous criminal trial. In other words, he is seeking to vindicate his right to a procedurally fair criminal trial. Consequently, the materiality test in a Section 1983 case is directed towards a different question: suppressed evidence or testimony is material only if it affected the question whether the defendant was deprived of a fair trial. The fact that a defendant was acquitted has little to do with whether the trial was fair, *see Haupt*, 17 F.3d at 287, and therefore has little to do with materiality in the context of a Section 1983 claim.

The Eleventh Circuit mechanically imported the materiality requirement, as developed in criminal cases like *Valenzuela-Bernal*, into its Section 1983 analysis without recognizing this key distinction. Relying exclusively on *Valenzuela-Bernal*, the Eleventh Circuit held that an acquitted defendant can never state a claim for a violation of his compulsory process right or his due process right to a fair trial because the violation will never be "material." *Kjellsen*, 517 F.3d at 1239. *Kjellsen*'s premise that a constitutional deprivation is only "material" if it would have resulted in a different verdict would mean that an acquittal nullifies any Section 1983 claim by an acquitted criminal defendant. This premise is wholly inconsistent with *Haupt*, which explicitly holds that an acquittal does not bar a Section 1983 claim for due process violations.

The Eleventh Circuit's failure to recognize that materiality must have a different meaning in Section 1983 cases than in criminal cases was an error that led that circuit to effectively bar all Section 1983 claims by acquitted defendants and thus to create a direct conflict with our precedent in *Haupt*. We decline to follow the Eleventh Circuit's approach, and instead reaffirm our binding rule:

Park's acquittal does not render Ayala's allegedly suppressed testimony immaterial, nor does it preclude her from bringing a Section 1983 action to vindicate her right to a fair trial.

Thompson contends that *Haupt* has been effectively nullified because it relied on *Cooper v. Dupnik*, 963 F.2d 1220 (9th Cir. 1992) (en banc), which was later overruled by the Supreme Court in *Chavez v. Martinez*, 538 U.S. 760 (2003). This argument is without merit. *Cooper* held that a *Miranda* violation was actionable under Section 1983 despite the fact that the defendant was "never formally . . . charged in court and [] none of his statements ever were offered in evidence to his potential detriment." *Cooper*, 963 F.2d at 1245. This holding was overturned by *Chavez*, in which a plurality of the Supreme Court said that an officer's failure to read *Miranda* warnings to a defendant before interrogation violates only "judicially crafted prophylactic rules" and, for that reason, was not actionable under Section 1983.[18] *Chavez*, 538 U.S. at 772. Critically, *Chavez* simply does not address cases in which a defendant's "core constitutional right[s]" are violated, *see id.* at 772, let alone hold that such violations may not serve as the basis for a Section 1983 action if the defendant has been acquitted. In short, *Chavez* in no way undermines *Haupt*, and regardless of whether the *Chavez*

---

[18] Justice Souter, joined by Justice Breyer, concurred in the judgment only, on an even more limited basis. The concurrence, without which the result in *Chavez* would not have garnered a majority of the Court, explicitly declined to decide "whether the absence of *Miranda* warnings may be a basis for a § 1983 action *under any circumstance*" because that question was "not before the Court." *Chavez*, 538 U.S. at 779 n.* (Souter, J., concurring in the judgment) (emphasis added).

plurality or Justice Souter's even more limited concurring opinion controls, *Haupt* remains the law of the circuit.[19]

### b. Ayala's testimony was material to Park's defense.

The district court also concluded that Park failed to adequately plead materiality because Gilmore's statements alone were not sufficient to lead to a reasonable inference that he was the murderer and therefore Ayala's testimony was "not actually 'exculpatory evidence.'" In his analysis, the district judge required a higher degree of exculpation than is appropriate under our precedents. We reverse and conclude that Park has adequately pleaded that Ayala's potential

---

[19] In a subsequent case in this court, the three judges on the panel each offered non-binding comments on an analogous question: whether a *Brady* violation is actionable under Section 1983 following an acquittal. *See Smith v. Almada*, 640 F.3d 931 (9th Cir. 2011). The majority opinion, authored by Judge James Gwin, of the Northern District of Ohio sitting by designation, address the effect of an acquittal because the author, along with Ninth Circuit Judge Ronald Gould, concluded that the undisclosed evidence was immaterial for reasons separate from the acquittal. *See id.* at 939–40. In a separate special concurrence to his majority opinion, Judge Gwin expressed his own view that had the panel been required to reach the question, he would have held that *Brady*-based Section 1983 claims are disallowed in the absence of a conviction. *Id.* at 945. Judge Gould also filed a separate concurrence, indicating that if a case before him properly presented the issue, he would be "inclined" to hold that an acquittal bars *Brady*-based claims. *Id.* at 940. Judge D.W. Nelson dissented on the ground that the undisclosed evidence was material, and its suppression therefore violated the *Brady* doctrine. *Id.* at 946. Consequently, she would have reached the question of an acquittal's effect and would have held that an acquittal does not bar a *Brady*-based Section 1983 claim. *Id.* at 948. In the end, *Almada* did not reach the *Haupt* question, and *Haupt* remains controlling precedent on the question before us: an acquittal does not preclude a Section 1983 claim arising out of a fundamental constitutional violation.

testimony was material. Materiality does not require incontrovertible evidence of exculpation; to the contrary, evidence that tends to "cast doubt" on the government's case qualifies as material. *See United States v. Leal-Del Carmen*, 697 F.3d 964, 972 (9th Cir. 2012); *see also Gov't of Virgin Islands v. Mills*, 956 F.2d 443, 446 (3d Cir. 1992) (concluding witness's excluded testimony was favorable and material where "it could have served to cast doubt on [victim's] identification").

In the present case, were Ayala to have testified that Gilmore choked her while referring to Redding's death, it would have been sufficient to permit Park to present a third party culpability defense under California law. Ayala's testimony about Gilmore would have satisfied California's threshold standard for introducing evidence of third party culpability, which merely requires "direct or circumstantial evidence linking the third person to the actual perpetration" of the murder. *People v. Hall*, 718 P.2d 99, 104 (Cal. 1986) (defining standard that an accused must meet under California law for admission of evidence of third-party culpability). Consequently, the trial judge would likely have allowed Park to mount a third-party culpability defense under *Hall* if Ayala had been willing to testify.[20] Even if circumstantial evidence of third party culpability is not itself sufficient to compel acquittal, it would have been sufficient to "cast doubt" on the government's evidence and would therefore have been material. *Leal-Del Carmen*, 697 F.3d at 972.

---

[20] *See supra* n.14.

## II. Civil Conspiracy Claim Under Section 1983

Park also alleges that Thompson "orchestrated the charging of Ms. Ayala to ensure that she did not testify for the defense" and that, on information and belief, she brought about that result in collaboration with a number of Doe Defendants.[21] After the District Attorney received notice that Park planned to call Ayala as a defense witness, and after Detective Thompson's phone conversation with Ayala, Thompson and/or a Doe defendant allegedly contacted the El Segundo Police and convinced an officer to initiate charges against Ayala. The District Attorney then unexpectedly brought felony criminal charges against Ayala stemming from a physical dispute with Gilmore approximately a year earlier.

Shortly afterwards, at Park's criminal hearings, Ayala declined to testify at Park's trial because of these pending charges and after the Deputy District Attorney threatened to "recuse" her attorney if he did not advise her to invoke her Fifth Amendment privilege. Following Ayala's refusal to testify, the District Attorney dismissed the felony charges, and Ayala received a probationary sentence after pleading no contest to a misdemeanor charge. Based on these facts, as well as information and belief, Park alleged that Thompson colluded with others to arrange for the filing of criminal

---

[21] Although "[a]s a general rule, the use of 'John Doe' to identify a defendant is not favored," in circumstances "where the identity of alleged defendants will not be known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642–43 (9th Cir. 1980). Here, Park is entitled to discovery on the identity of the Does.

charges against Ayala in an effort to make her unavailable to
testify at trial.

Park's complaint alleged facts that are "suggestive" of an
agreement to engage in "illegal conduct." *See Twombly*, 550
U.S. at 564 n.8. When the entire factual context is
considered,[22] it is clear that Park has "nudged [her] claim[]"
that Thompson conspired to orchestrate Ayala's
unavailability "across the line from conceivable to plausible."
*See Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (internal
quotation marks omitted). "The *Twombly* plausibility
standard . . . does not prevent a plaintiff from pleading facts
alleged upon information and belief where the facts are
peculiarly within the possession and control of the defendant
or where the belief is based on factual information that makes
the inference of culpability plausible." *Arista Records, LLC
v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations and
quotation marks omitted); *see also Concha v. London*, 62
F.3d 1493, 1503 (9th Cir. 1995) ("[W]e relax pleading
requirements where the relevant facts are known only to the
defendant."). Because many of the relevant facts here are
known only to the defendant, and in light of the additional
facts alleged by Park, we conclude that she has pleaded

---

[22] The dissent attempts to characterize this rather unusual course of
events as merely "some parallel conduct." Dissenting Op. at 37. As
explained above, however, when the entire sequence of events in the
complaint is considered in context, what might otherwise appear to have
been coincidental parallel conduct on its own becomes "suggestive of
illegal conduct" and is thus sufficient to survive a motion to dismiss.
*Twombly*, 550 U.S. at 564 n.8.

sufficient facts to state a plausible claim for civil conspiracy under Section 1983.**[23]**

## CONCLUSION

For the reasons stated above, the district court's dismissal of Park's complaint is reversed and remanded for proceedings consistent with this opinion. **REVERSED AND REMANDED**.

---

FERNANDEZ, Circuit Judge, concurring in part and dissenting in part:

I respectfully concur in part and dissent in part.

I agree with the majority that we must review the district court's decision *de novo*. *See Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). Moreover, I agree that we view the allegations of the complaint in the light most favorable to the plaintiff. But that does not mean that a complaint is sufficient because we can imagine a possibility that the defendant has committed some wrongdoing. Rather, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation

---

**[23]** Thompson contends that she is entitled to qualified immunity. The district court declined to address Thompson's qualified immunity argument because it dismissed both of Park's causes of action for other reasons. We do not consider the question here in the absence of its initial consideration by the district judge.

marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–84, 686–87, 129 S. Ct. 1937, 1949–52, 1954, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

Moreover, where a plaintiff has relied upon a document, or parts thereof, courts can properly consider the whole of the document to be effectively incorporated by reference into the complaint. *See Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam); *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005).

As the district court determined, Park's complaint does not cross the line and reach plausibility; it is blocked by the principles outlined above.

A.  I agree that if a government officer "'intimidates or harasses the witness to discourage the witness from testifying,'" that indicates "'[u]ndue prosecutorial interference.'" *United States v. Bohn*, 622 F.3d 1129, 1138 (9th Cir. 2010); *see also Earp v. Ornoski*, 431 F.3d 1158, 1170–71 (9th Cir. 2005); *Williams v. Woodford*, 384 F.3d 567, 601–02 (9th Cir. 2004).  Unnecessarily strong warnings can accomplish that. *See, e.g.*, *Webb v. Texas*, 409 U.S. 95, 98, 93 S. Ct. 351, 353–54, 34 L. Ed. 2d 330 (1972) (per curiam); *United States v. Vavages*, 151 F.3d 1185, 1190–91 (9th Cir. 1998); *cf. United States v. Jaeger*, 538 F.3d 1227, 1231–32 (9th Cir. 2008).  Had Thompson engaged in that sort of activity, she would have acted improperly. *See Ayala v. Chappell*, 829 F.3d 1081, 1110–11 (9th Cir. 2016).  She did not do so.

In fact, Thompson did not threaten Ayala at all, and surely did not suggest that Ayala should not testify. Of course, she did state that Gilmore was "really upset." However, that was not because of what Ayala had said or would say, but because the defense minions had bad-mouthed him and claimed that he had committed other unsavory crimes. Gilmore was concerned that their statements would cause Ayala to "lose faith in him." One could speculate that the "really upset" language was, or was taken as, some sort of threat, but that would be speculation about a mere possibility and a rather strange reading of the whole conversation at that. By the way, even if one were persuaded by the reasoning of *Smith v. Baldwin*, 466 F.3d 805, 824 (9th Cir. 2006), *vacated*, 510 F.3d 1127, 1148–49 (9th Cir. 2007) (en banc), it is not at all "obvious" that there was intimidation or coercion by Thompson in this case.

Furthermore, Thompson told Ayala that if she received a subpoena she was "under an obligation to appear." Moreover, when Ayala said that she did not want to hurt Gilmore, Thompson replied: "No, I understand. But—but you have to tell the truth and you'll have to let us do our job . . . ." None of that bespeaks an attempt to keep Ayala from testifying; quite the contrary.

I recognize that Thompson entered dangerous territory when she decided to talk to Ayala and tell her that she was not required to speak further to Park's investigators. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 508–09 (9th Cir. 1994); *United States v. Rich*, 580 F.2d 929, 934 (9th Cir. 1978). But dangerous is not the same as forbidden.[1]

---

[1] For example, our freeways are undoubtedly dangerous to all drivers; they are not forbidden to them.

Therefore, Thompson's decision to speak with Ayala may not have been wise, but it was not disastrous.**²**

Incidentally, the complaint's mere general pleading that there is some sort of nexus between the conversation in question and Ayala's decision not to testify is conclusory and insufficient. *See Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926–27 (9th Cir. 2013); *see also Iqbal*, 556 U.S. at 686–87, 129 S. Ct. at 1954. That is especially true in the context of this case where, in fact, Ayala did appear at trial in response to a subpoena, and refused to testify on wholly different grounds—she, herself, was facing criminal charges and invoked her Fifth Amendment rights on that account. The district court was not required to accept the fantasy, which was based on nothing more than the complaint's information and belief assertion, that Ayala would have blithely incriminated herself were it not for the conversation she had with Thompson. *See Burrage v. United States*, __ U.S. __, __, 134 S. Ct. 881, 887–89, 187 L. Ed. 2d 715 (2014) (but for causation); *Blantz*, 727 F.3d at 926–27 (conclusory information and belief allegations); *Vavages*, 151 F.3d at 1191 (but for causation).

---

**²** It should be noted that even viewed through the majority's somewhat distorted lens, the alleged claim of substantial interference with Park's due process rights at trial is very weak. For example, just what evidence was Park denied? Possibly, Ayala would have testified that when she baited Gilmore by accusing him of killing the murder victim, who everyone knew had been strangled, he choked her and said: "You want to see how she felt?" Although there is no justification for his reaction to her statement, it is important to recognize that he did not spontaneously choose that topic. He was reacting to Ayala's taunt. Moreover, in their unusual relationship, Ayala had, it seems, also assaulted Gilmore—hence her own prosecution.

Thus, I dissent from part I.1 of the Discussion portion of the majority opinion.

B.   Because I do not think that there was a proper allegation of a substantive violation, I also do not believe that a conspiracy was effectively alleged. *See Lacey v. Maricopa County.*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc). Furthermore, there is not even a shard of a fact to show that Thompson participated in any agreement to violate Park's constitutional rights. Even if she had committed a violation when she spoke with Ayala, there is nothing to support the claim that she conspired with others to have Ayala prosecuted on criminal charges.[3]

In addition, while the majority basically contents itself with the reflection that in general a pleading of conspiracy on information and belief is enough if defendants have the information,[4] I do not believe that that kind of conclusory pleading can suffice here. *See Blantz*, 727 F.3d at 926–27; *see also Twombly*, 550 U.S. at 555–58, 127 S. Ct. at 1964–66. Were it otherwise, a party could evade the plausible-pleading standard by merely asserting information and belief and pointing to some parallel conduct. As it is, Thompson's phone call was a far cry from the filing of a criminal felony complaint by another agency and prosecutor, even though they both involved Ayala.

---

[3] Those charges were hardly trumped up or false, and Ayala ultimately pled nolo contendere to a lesser offense. *See Williams*, 384 F.3d at 601–02.

[4] An interesting circular concept: I do not have evidence of an agreement, but since I say that you agreed, you must have the evidence.

Thus, I dissent from part II of the Discussion portion of the majority opinion.

C.  As I read the majority opinion (Discussion portion part I.2), it seems to declare that an acquittal may or may not ultimately preclude a constitutional claim; that will depend on the facts and circumstances of the particular case.[5]  If I read it aright, I do not disagree in principle with that general proposition.  However, as I have already indicated, in this case the complaint does not spell out a constitutional claim in the first place.  Thus, I need not and do not opine on what the result should be if Park had adequately pled that her rights had been violated by Thompson's conversation with Ayala.

D.  I agree with the majority that the issue of qualified immunity should be remanded to the district court for its consideration in the first instance.  *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 819–20, 102 S. Ct. 2727, 2739, 73 L. Ed. 2d 396 (1982); *Price v. Hawaii*, 939 F.2d 702, 707 (9th Cir. 1991).

Thus, I respectfully concur in part and dissent in part.

---

[5] *See Haupt v. Dillard*, 17 F.3d 285, 287–88 (9th Cir. 1994); *see also Smith v. Almada*, 640 F.3d 931 (9th Cir. 2011) (majority opinion, two concurring opinions, and one dissenting opinion); *Mosley v. City of Chicago*, 614 F.3d 391, 397–98 (7th Cir. 2010); *Kjellsen v. Mills*, 517 F.3d 1232, 1238–40 (11th Cir. 2008); *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988).